IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHRISTOPHER BREAZEALE                                                    PLAINTIFF

V.                                                    CAUSE NO. 3:15-CV-00417-CWR-LRA

HINDS COUNTY, ET AL.                                                    DEFENDANTS

**ORDER**

Before the Court is defendant Hinds County's motion for summary judgment. Having reviewed the applicable law and briefings, the Court is ready to rule.

I.     **Factual and Procedural Background**

On the morning of August 29, 2014, a Hinds County Deputy Sheriff arrested Christopher Breazeale. Upon his arrest, Breazeale informed the officer that he suffered from diabetes. In fact, he is Type I diabetic.[1] Breazeale injects insulin four times throughout the day for a routine total of 115 units of insulin.

The deputy took Breazeale to the Hinds County Detention Center ("HCDC") where Breazeale was medically screened at 4:49 a.m., and remained in custody until September 2, 2014. In addition to telling his arresting officer, Breazeale also informed the booking officer who conducted his medical screening, and multiple other employees of HCDC and Quality Choice Correctional Healthcare ("QCCH")—the contractor responsible for delivering medical care to Hinds County inmates—that he was an insulin dependent diabetic. Neither HCDC employees nor QCCH employees notified Breazeale of when he might receive insulin, which he informed them he was required to inject with every meal.

---

[1] Type I diabetes is a chronic condition in which the pancreas does not produce insulin. The disease has no cure, but it can be managed. Lack of proper management can lead to a number of serious complications including neuropathy, heart attack, stroke, kidney failure, nerve damage, and blindness. *See Type I diabetes*, MAYO CLINIC (Aug. 2, 2014), http://www mayoclinic.org/diseases-conditions/type-1-diabetes/basics/complications/con-20019573.

Between 7:30 a.m. and 8:00 a.m. on the morning of his arrest, Breazeale was allowed to make a phone call. He informed his mother of his detention and requested that she bring his medication to HCDC. She attempted to do so, but was turned away by staff, despite intake evaluation procedures that provide "detainees that indicate they are in need of prescription medication" with "the opportunity to call a family member . . . and arrange for that medication to be brought to the detention facility." Several hours and two meals passed[2] before Breazeale was offered insulin. By the time a QCCH nurse attended to Breazeale, his blood glucose level was measured to be 307 mg/dl.[3] Despite the high reading, plaintiff received only 8 units of insulin for the entire day—more than one hundred units fewer than his normal regimen. He informed the nurse that he regularly administered a much higher dosage, but was told "that's all you're going to get."

Plaintiff did not see a nurse, have his blood glucose tested, or receive an insulin injection again until more than twenty-four hours and three meals[4] later the following afternoon, August 30, 2017. At approximately 2:50 p.m. his blood glucose was measured to be 456 mg/dl, and despite the elevated reading the nurse administered 12 units of insulin—again more than one hundred units fewer than his daily regimen.

---

[2] Defendant perniciously mocks Breazeale for eating while incarcerated, and callously suggests that he ate intending to harm himself. This distortion of Breazeale's medical condition completely ignores the failure to provide him with any insulin prior to or during those meals and the recurring failure to administer his insulin in its prescribed dosages. Breazeale clearly and repeatedly evinced his desire to receive insulin injections. Defendant's contention borders on the unconscionable.

[3] The American Diabetes Association advises diabetics to keep their blood glucose levels between 80 and 130 mg/dl before meals and under 180 mg/dl after meals. *See* David Spero, *What Is a Normal Blood Sugar Level?*, DIABETES SELF-MANAGEMENT: BLOG, https://www.diabetesselfmanagement.com/blog/what-is-a-normal-blood-sugar-level/, (last updated May 24, 2017).

[4] Criticizing Breazeale for eating the meals HCDC provided is unwarranted since simply skipping meals, as proposed by defendant, can pose serious health risks for diabetics. *See* Everyday Health, *What is Hypoglycemia?*, http://www.everydayhealth.com/hypoglycemia/guide/ (last updated Sep. 23, 2016) ("Low blood sugar will most often make you feel shaky and weak. In extreme cases, you could lose consciousness and slip into a coma.").

Later that afternoon Breazeale was admitted to the emergency room with a blood glucose level over 500 mg/dl and was diagnosed with a potentially life-threatening condition: diabetic ketoacidosis. *See* American Diabetes Association, *DKA (Ketoacidosis) & Keytones*, http://www.diabetes.org/living-with-diabetes/complications/ketoacidosis-dka.html (last edited Mar. 18, 2015) ("Diabetic ketoacidosis is a serious condition that can lead to diabetic coma or even death.").

## II.     Legal Standard

Rule 56 directs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains." *Sims v. Monumental Gen. Ins. Co.*, 960 F.2d 478, 479 (5th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted).

## III.    Discussion

Hinds County is the only remaining identified[5] defendant in this 42 U.S.C. § 1983 action. Through an agreed order, the plaintiff dismissed, Sheriff Tyrone Lewis, the only other properly named defendant.  For plaintiff to recover from the County he must make a two part showing. First, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[5] Ten John/Jane Does are also sued, but remain unidentified.

3

When, as here, a pretrial detainee alleges failure to provide adequate medical care, he must show that "a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000).

Second, plaintiff must link the deprivation suffered to a municipal policy, custom, or practice. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury."). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61 (quotation marks and citations omitted).

There is enough evidence, taken together with reasonable inferences drawn in favor of the plaintiff, to demonstrate the existence of a genuine dispute as to whether plaintiff's medical needs were met with deliberate indifference. There is a dearth, however, of evidence supporting any assertion that plaintiff's injuries were caused by municipal policy, custom or practice. The plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). "[T]he policy must be the 'moving force' behind the violation." *Piotrowski v. City of Hous.*, 237 F.3d 567, 580 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Serv. of N.Y.C.*, 436 U.S. 658, 694 (1978)). A municipality "may be held liable only for acts for which it is actually responsible." *Doe v. Dall. Ind. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citation omitted). Moreover, it cannot be held liable under § 1983 on a *respondeat superior* theory for an act of its employees, *see Grabowski v. Jackson Cty. Pub. Def. Office*, 79 F.3d 478, 479 (5th Cir. 1996), and it certainly cannot be held vicariously liable for the

actions of those who are not its officers or employees.[6] *L.T. ex rel. Hollins v. City of Jackson*, 146 F. Supp. 2d 750, 762 (S.D. Miss. 2000). Plaintiff has not submitted evidence to demonstrate the existence of a policy, custom or practice that could have precipitated his injuries. Rather, he has submitted only evidence of his own alleged deprivation. Generally, one incident is insufficient to establish a custom or practice. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee . . . ."); *Piotrowski*, 237 F.3d at 581 ("Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."). A narrow single-incident exception may apply in limited circumstances. *See, e.g.*, *Burge v. St. Tammany Par.*, 336 F.3d 363, 372-73 (5th Cir. 2003). The Court finds that single-incident exception has no application here nor has the plaintiff put forth such an argument.

### IV.     Conclusion

Defendant's motion for summary judgment is granted. A separate final judgment shall issue in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED**, this the 11th day of July, 2017.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE

---

[6] The evidence before the Court establishes that the nurses and doctors who provided medical attention to Breazeale within the HCDC were not employees of Hinds County but were employees or agents of QCCH.